## No. 14,796.

WEIDENSAUL *v.* INDUSTRIAL COMMISSION ET AL.
(108 P. [2d] 234)

Decided December 9, 1940.

Mr. FINLAY M. ROBINSON, Mr. DARWIN D. COIT, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. FRANK A. BRUNO, Assistant, Mr. HAROLD C. THOMPSON, Mr. LOUIS SCHIFF, Mr. E. V. HOLLAND, for defendants in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is a workmen's compensation case. Plaintiff in error, Weidensaul, hereinafter referred to as the claimant, was seriously injured November 18, 1938, while delivering papers for The Denver Publishing Company (the Rocky Mountain News), employer and one of the defendants in error. The injury consisted principally of a fracture of the femur of the right leg, and as a result of it claimant remained in the hospital until September, 1939. He did not file his claim for compensation until about November, 1939, almost a year after the accident. The referee found that the claim was barred by the six months' statute of limitations ('35 C.S.A., chapter 97, section 363, C.L., §4458), which finding was affirmed by the commission, as well as by the trial court to which the matter was referred in due course. The Compensation Fund is named as a defendant in error by virtue of its status as insurance carrier. Counsel agree that the only question involved was whether the claim was barred by the six months' statute of limitations.

To sustain his position that the claim is not so barred, claimant's counsel urge two propositions: (a) The employer is estopped from setting up the statute as a defense. (b) Claimant's physical and mental incapacity excused him from complying with the statute.

(a) As a basis for estoppel, claimant relies upon the behavior of the employer, the statement of his physician and the conduct of the hospital authorities. What happened was this: Immediately following the mishap, claimant was carried into a farmhouse near the scene of the accident. A woman at the house tried to get in touch with the employer, but receiving no response she called Dr. Spangelberger, personal friend and physician of the claimant, who advised that he be sent to a hospital, which was done. The doctor, who up to that time had not made contact with the employer, admonished the claimant, "Don't you worry about one thing; everything will be taken care of." Two days later the physician was advised by the employer that the claim would be resisted on the ground that claimant was an independent contractor, and not an employee. This information never was communicated to claimant by either the doctor or the employer. The morning after the accident claimant's niece called at the hospital, and in relating what occurred she states in her testimony: "I talked to Dr. Spangelberger that morning and I asked him whether there was anything I could stop and report or file, in the way of making a report of the accident, on my way back to the office." The doctor said, "just entirely forget filing any papers or making any report of the accident, that he would take care of the whole thing himself." She testified that as a result of this conversation, she "dismissed the matter entirely." The hospital authorities did place claimant in the compensation ward, but as soon as the physician was so notified, they were informed that liability for compensation would be contested. No statement or account was presented to claimant until after he had been dismissed from the hospital. The only explanation given by the doctor regarding his encouraging statements to claimant was that he "just wanted to give him a little assurance."

The above excerpts from the record are sufficient to indicate that instead of forming a basis for estoppel

against the employer, they simply present a case of misplaced confidence in a friend and medical advisor. Claimant admitted that the doctor was his agent, and the record amply supports it. There is nothing in the record to indicate that the doctor was the agent of the employer for any purpose whatsoever. "To say, therefore, that he was empowered to give advice as to legal procedure which would bind the plaintiff in error, passes the limits of any rule of agency." *London G. & A. Co. v. Industrial Com.*, 83 Colo. 252, 263 Pac. 405.

 It is true that the employer did not notify the commission of the accident, but failed to do so only in the honest belief that claimant was an independent contractor, and so advised claimant's agent at the first opportunity. While the commission found that claimant was an employee, after a contest on that question, such finding in no way excused him from filing his claim within the six months' period, and defendants in error did not waive their right to raise the statute by the consideration of other phases of the case, because at every opportunity they specifically reserved their right to rely on it.

 (b) We cannot take seriously claimant's contention that he should be excused from compliance with the statute because of physical and mental incapacity. The record does show that he suffered severely from shock for a few days after the accident, but he freely admitted that he was mentally alert after that, and his niece, as already indicated, volunteered to look after the matter for him. There is nothing in the record to indicate that he was even distressed to the point of being excusable on that ground. While the recent case of *Colorado Springs v. Colburn*, 102 Colo. 483, 81 P. (2d) 397, would seem to favor claimant, he has precluded himself from being covered by that case by admitting he entrusted the whole matter to his friend, the doctor.

The result of this case is unfortunate, but, as we are persuaded, claimant is obliged to accept the result of his own failure to act timely.

Judgment affirmed.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE KNOUS and MR. JUSTICE OTTO BOCK dissent.